UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – X
SUSAN GHAHREMANI,

                  Plaintiff,

    v.

CRAFT FOR KIDS IMPORTS, INC.,

                  Defendant.
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

**REPORT & RECOMMENDATION**

**24-CV-04356 (FB) (LKE)**

**LARA K. ESHKENAZI**, United States Magistrate Judge:

Before the Court, on referral from the Honorable Frederic Block, is the motion of Plaintiff, Susan Ghahremani ("Plaintiff"), for default judgment against Defendant Craft For Kids Imports, Inc. ("Defendant" or "Defendant CFK"). For the reasons set forth below, the Court respectfully recommends that the motion be granted.

## FACTUAL BACKGROUND

On June 20, 2024, Plaintiff Susan Ghahremani filed a Complaint (Compl., ECF No. 1) against Defendant CFK and five unknown defendants alleging copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501, *et seq.*; distribution of goods with missing and altered copyright management information in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b); and distribution of goods with false copyright management information in violation of the DMCA, 17 U.S.C. § 1202(a). According to the Complaint, Plaintiff "is a world-renowned, award-winning artist" who "sells enamel pins, stationery, children's books, and a variety of other products featuring her original artwork under the brand name 'boygirlparty.'" (Compl. ¶ 12.) Plaintiff sells her designs through her personal e-commerce website, Etsy, and various authorized third-party retailers. (*Id.*)

Three of Plaintiff's products are at issue in this lawsuit: *Boygirlparty Blue Chicken*, *Boygirlparty Penguin*, and *Boygirlparty Hedgehog Pin* (the "Original Designs"). (Compl. ¶ 13.) Plaintiff alleges that she is the author and copyright holder of the three Original Designs, and that she has obtained Copyright Registration Numbers for each. (Compl. ¶¶14-16.) The authorized displays of the Original Designs contain numerous forms of copyright management information, including "Ms. Ghahremani's name; the "boygirlparty" brand name; and a copyright notice featuring the "©" copyright symbol[.]" (Compl. ¶ 17.) This information is primarily used to identify Plaintiff as the copyright holder for the three Original Designs. (Compl. ¶ 19.)

"Defendant CFK is a wholesaler of arts and crafts supplies that sells and distributes its various product offerings to third-party stores and retailers." (Compl. ¶ 20.) Defendant operates a website where it sells and displays its products to stores and retailers in New York. (Compl. ¶ 21.) According to the Complaint, "Defendants created, manufactured, caused to be manufactured, imported, marketed, distributed, displayed, and/or sold products featuring designs identical or substantially similar to the Original Designs (the "Infringing Products")" without seeking Plaintiff's consent. (Compl. ¶ 23.) Defendant removed Plaintiff's copyright management information and subsequently distributed the Infringing Product with its own copyright management information. (Compl. ¶¶ 27-29.) Furthermore, Defendant "displayed and advertised these Infringing Products with Plaintiff's copyright management information removed and its false copyright management affixed to it in an online catalog of its products (the 'CFK Catalog') accessible via the CFK Website[.]" (Compl. ¶ 30.)

After Plaintiff's fans discovered the infringing products at New York City retailers and notified Plaintiff, Plaintiff's counsel "made numerous attempts over the course of the last year to resolve this matter amicably with Defendant CFK to avoid the need for litigation." (Compl. ¶

35.) These attempts included: (1) a cease-and-desist letter sent to an e-mail address listed on Defendant's website; (2) a follow-up email to the same email address; and (3) another cease-and-desist letter sent to the same e-mail address and mailed via FedEx. (Compl. ¶¶ 37-43.) Defendant did not respond to any of these communications. (Compl. ¶ 36.) To date, Defendant continues to display, advertise, and sell the Infringing Products on its website. (Gerber Decl. ¶ 15, ECF No. 14.)

Defendant failed to file an answer by its deadline, July 15, 2024, and has failed to make an appearance in this action. Plaintiff filed an application for a Clerk's Certificate of Default against Defendant CFK on July 16, 2024. (Pl. Application for Default, ECF No. 10.) Two days later, on July 18, 2024, the Clerk of Court entered a Certificate of Default against Defendant CFK. (Clerk's Entry of Default, ECF No. 11; ECF No. 14-3 [Ex. C].)

## DISCUSSION

### I. JURISDICTION AND VENUE

#### A. Subject Matter Jurisdiction

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, Plaintiff asserts claims under the Copyright Infringement Act, 17 U.S.C. § 501, *et seq.*, and the Digital Millennium Copyright Act, 17 U.S.C. § 1202(a)-(b). Therefore, the Court has subject matter jurisdiction over Plaintiff's case.

##### 1. Service of Process

"For a federal court to exercise personal jurisdiction over a defendant, the plaintiff's service of process upon the defendant must have been procedurally proper." *Windward Bora LLC v. Valencia*, No. 19-CV-4147 (NGG) (RER), 2020 WL 6470293, at *2 (E.D.N.Y. Oct. 16, 2020),

*report and recommendation adopted by* 2020 WL 6450286 (E.D.N.Y. Nov. 3, 2020) (internal quotations omitted). Federal Rule of Civil Procedure 4(h)(1)(A) provides that a corporate defendant must be served "in the manner prescribed by Rule 4(e)(1) for serving an individual[.]" Fed. R. Civ. P. 4(h)(1)(A). Moreover, under subsection (B), the summons and complaint may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B). Rule 4(e)(1) states that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1).

New York law mandates that "[t]he secretary of state shall be the agent of every domestic corporation and every authorized foreign corporation upon whom process against the corporation may be served." N.Y. Bus. Corp. Law ("NYBCL") § 304(a). Indeed, "[n]o domestic or foreign corporation may be formed or authorized to do business in this state under this chapter unless in its certificate of incorporation or application for authority it designates the secretary of state as such agent." N.Y. Bus. Corp. Law § 304(b). Lastly, NYBCL section 306 provides that:

> Service of process on the secretary of state as agent of a domestic … corporation shall be made … [by] personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee…. Service of process on such corporation shall be complete when the secretary of state is so served.

N.Y. Bus. Corp. L. § 306(b)(1).

Here, Plaintiff has properly served Defendant in this action. Defendant is a New York Corporation, so service of process of the Summons and Complaint upon the New York Secretary of State constitutes proper service on Defendant. On June 24, 2024, Plaintiff personally delivered and left two copies of the Summons and Complaint, along with the statutory fee, with Nancy Dougherty, the Authorized Agent in the Office of the Secretary of State of New York. (Affidavit of Service, ECF 14-2.) Ms. Dougherty was served at the Office of the Secretary. (*Id.*) Plaintiff subsequently filed the proof of service with the court on June 28, 2024. Accordingly, Defendant has been properly served in this action. *Phillips v. TraxNYC Corp.*, No. 21-CV-0528 (LDH) (MMH), 2023 WL 1987206, at *4 (E.D.N.Y. Feb. 14, 2023) (citing Fed. R. Civ P. 4(e)(1), (h)(1)(A), N.Y. Bus. Corp. L. §306(b)(1)) ("Plaintiff properly served Defendant by delivering copies of the summons and Complaint with the New York Secretary of State."); *Logan v. World Luxury Cars, Inc.*, No. 15-CV-0248 (ENV) (PK), 2022 WL 2466834, at *4 (E.D.N.Y. Mar. 30, 2022) ("The law is clear that delivery of the summons and complaint to the Secretary of State is sufficient to constitute service on the Corporate Defendant.").

   2.   *Venue*

"A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). Furthermore, "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Venue is proper in the Eastern District of New York because "a substantial part of the events giving rise to the claims alleged herein occurred in this District, Defendant's unlawful acts of infringement occurred in this District, and Defendant is doing business in this District and may be found in this District."

(Compl. ¶ 11.); 28 U.S.C. § 1391(b)(2); 28 U.S.C. § 1400(a). Indeed, the packets that contain the Infringed Products indicates that Defendant's business address is in Ridgewood, New York, which is located in the Eastern District of New York. (Compl. at p. 20.)

## II. DEFAULT JUDGMENT STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, there are two steps to entering a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). This first step is nondiscretionary. *See United States v. Conolly*, 694 Fed. App'x 10, 12 (2d Cir. 2017). Second, after the Clerk of the Court enters a defendant's default, the court may enter a default judgment. *See* Fed R. Civ. P. 55(b).

Here, on July 18, 2024, the Clerk of the Court entered default against Defendant after Defendant failed to respond to the Complaint or otherwise appear in this action. (Entry of Default, ECF No. 11.) To date, Defendant has not appeared or moved to vacate the entry of default.

Whether or not a default judgment is issued is up to the discretion of the court. When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [...] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270

(E.D.N.Y. 2010) (internal quotations and citations omitted); *see TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 Fed. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citations omitted).

"Default judgments 'are generally disfavored and are reserved for rare occasions.'" *City of State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 168 (2d Cir. 2004) (quoting *Enron Oil Corp.*, 10 F.3d at 96). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] ... delay and clog its calendar," it has held that a district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil Corp.*, 10 F.3d at 96. Thus, considering the "oft-stated preference for resolving disputes on the merits[,]" doubts should be resolved in favor of the defaulting party. *See id.* Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice.").

Once the Clerk of the Court enters a certificate of default, a defendant is deemed to have admitted the well-pled allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citations omitted). A fact is not considered well-pled, however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, […] or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-3259 (NGG) (RLM), 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (citations and

internal quotation marks omitted). Ultimately, whether to grant a motion for default judgment is "left to the sound discretion of [the] district court[.]" *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (quoting *Enron Oil Corp.*, 10 F.3d at 95); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

"In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, No. 18-CV-2660 (MKB) (SJB), 2019 WL 1387538, at *2 (E.D.N.Y. Jan. 29, 2019) (citing *Enron Oil Corp.*, 10 F.3d at 96); *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001)). "These factors are '1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Double Green Produce*, 2019 WL 1387538, at *2 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)) (internal quotation marks omitted).

As to the first factor, "a defendant's nonappearance and failure to respond sufficiently demonstrates willfulness." *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411 (ARR) (VMS), 2017 WL 835321, at *4 (E.D.N.Y. Feb. 14, 2017), *report and recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017) (collecting cases). Here, the defaulting Defendant, Craft for Kids Imports, Inc., has not responded to the Complaint or the motion for default judgment despite proper service. (*See* Affidavit of Service, ECF No. 14-2.) Accordingly, Defendant's failure to respond to the Complaint or the instant motion demonstrates that Defendant's default is willful.

As to the second factor, Defendant's failure to appear in this action has left the Court unable to assess whether it has a meritorious defense. "Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations[.]" *See Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Necessarily, this weighs in favor of granting a default judgment.

With respect to the third factor, because Defendant has demonstrated a refusal to engage in this action, "there are no additional steps available to secure relief [against defendants] in this Court." *Trs. of Bldg. Trades Educ. Benefits Fund v. Romero Elec. LLC*, No. 19-CV-3515 (DRH) (AYS), 2021 WL 3604811, at *4 (E.D.N.Y. July 19, 2021) (internal quotation omitted). Therefore, the Court finds that the prejudice factor weighs in favor of default judgment.

Accordingly, the Court recommends finding that Defendant's failure to answer or otherwise respond to the Complaint constitutes an admission of the factual allegations therein. The Court now assesses the propriety of a default judgment with respect to Plaintiff's claims of copyright infringement under the Copyright Act and willful DMCA violations.

## III.    LIABILITY

### A.    Copyright Infringement

"Anyone who violates any of the exclusive rights of [a] copyright owner ... is an infringer of the copyright or right of the author[.]" 17 U.S.C. § 501(a). Section 106 of the Copyright Act states that a copyright owner's "exclusive rights" include, but are not limited to, "any of the following: (1) to reproduce the copyrighted work in copies ...; (2) to prepare derivative works based upon the copyrighted work; [or] (3) to distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." *Id.* § 106. The copyright holder must prove two elements to establish infringement: "'(1) ownership of a valid

copyright, and (2) copying of constituent elements of the work that are original.'" *Haker v. Tentree Int'l Inc.*, No. 20-CV-1499 (KAM) (RML), 2021 WL 3884195, at *3 (E.D.N.Y. Aug. 31, 2021) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

Plaintiff has established her ownership of a valid copyright. The Complaint alleges that Plaintiff is the author of the three Original Designs at issue, that she registered the designs with the United States Copyright Office, and that the designs contain numerous forms of copyright management information "which serve[] to identify [Plaintiff] as the author and copyright owner of the Original Designs." (Compl. ¶¶ 13-17.) "In the context of a default judgment, where the well-pleaded allegations in the complaint are accepted as true, no further proof of ownership is required." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD) (MMH), 2023 WL 2707096, at *4 (E.D.N.Y. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Second, Plaintiff has established that Defendant has copied constituent elements of the copyrighted work. "Copying", for the purposes of copyright infringement, "is shorthand for the infringing of any of the copyright owner's five exclusive rights described in Section 106 of the Act, namely, to reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work." *Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, 254 F. Supp. 3d 584, 590 (S.D.N.Y. 2017), *aff'd*, 738 Fed. App'x 722 (2d Cir. 2018) (internal quotations omitted). A copyright holder demonstrates "copying of constituent elements … that are original" when she shows that the work was "independently created" and "possesses at least some minimal degree of creativity." *Pasatieri v. Starline Prods. Inc.*, No. 18-CV-4688 (PKC) (VMS), 2020 WL 207352, at *2 (E.D.N.Y. Jan. 14, 2020) (internal quotation marks omitted). Here, Plaintiff's allegations are sufficient to meet her burden. The Complaint includes

side-by-side comparisons of Plaintiff's Original Designs and Defendant's Infringing Products. (Compl. ¶ 24.) Although not identical, the products are substantially similar because an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (internal quotation marks omitted). Plaintiff further alleges that Defendant continues "to sell, display, and distribute these Infringing Products to this day." (Compl. ¶ 60.) Accordingly, Plaintiff has established that Defendant infringed upon her copyrights.

### B. Distribution of Infringed Goods with False Copyright Management Information

Following the rise and popularity of the internet, Congress passed the DMCA to amend copyright laws and address certain issues that had developed as a result of the interplay and relationship between copyright ownership and the internet. The DMCA proscribes the removal or alteration of a work's copyright management information ("CMI"), as well as the distribution of false CMI. 17 U.S.C. §§ 1202(c)(1), (2), (3), (6), (7). Pursuant to section 1202(a) of the DMCA, "no person may provide or distribute false CMI, knowingly and with intent to induce, enable facilitate, or conceal copyright infringement. *Bus. Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007 (JGK) (RWL), 2023 WL 1809707, at *7 (S.D.N.Y. Feb. 8, 2023), *report and recommendation adopted*, 2023 WL 4267590 (S.D.N.Y. June 28, 2023) (citing 17 U.S.C. § 1202(a)). To hold a defendant liable for violating § 1202(a), a plaintiff must prove that the defendant "(1) provided or distributed CMI; (2) knew that the CMI was false; and (3) acted with the intent to cause or conceal copyright infringement." *Id.* (citing *Krechmer v. Tantaros*, 747 Fed. App'x 6, 9 (2d Cir. 2018)).

Here, Plaintiff alleges that Defendant "distributed the Infringing Products with [Defendant's] own name, address, and website prominently displayed, knowing that this

copyright management information was false." (Pl. Br. at 11, ECF No. 13 [citing Compl. ¶¶ 28-29.]) Plaintiff further alleges that Defendant knew the CMI was false because it was aware "that [Plaintiff], not CFK, was the true author and copyright owner of the Original Designs." (Compl. ¶ 31.) Lastly, Plaintiff alleges that Defendant continued to sell the products after Plaintiff notified Defendant on several occasions that it was distributing her copyrighted products with false copyright information. (Compl. ¶¶ 68-69.) Therefore, Plaintiff has shown that Defendant distributed her copyrighted works with false copyright management information.

## C. Distribution of Infringed Goods with Copyright Management Information Removed

Lastly, Plaintiff claims that Defendant violated section 1202(b) of the DMCA. Section 1202(b)(1) of the DMCA provides that "[n]o person shall, without the authority of the copyright owner or the law—intentionally remove or alter any copyright management information[.]" 17 U.S.C. § 1202(b)(1). To establish a violation of § 1202(b)(1), "a plaintiff must show (1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (collecting cases).

The Complaint sufficiently establishes Defendant's violation of section 1202(b)(1). The Complaint alleges that authorized displays of Plaintiff's work contain "numerous forms of copyright management [information]" including "[Plaintiff's name]; the 'boygirlparty' brand name; and a copyright notice featuring the '©' copyright symbol[.]" (Compl. ¶ 17.) Furthermore, the Complaint alleges that Defendant intentionally removed Plaintiff's CMI and subsequently distributed the infringing products with Plaintiff's CMI removed. (Compl. ¶¶ 27-28.) Accordingly, Plaintiff has established a violation of 17 U.S.C. § 1202(b)(1).

## IV.    DAMAGES

### A.    Distinct Injuries

Plaintiff argues that she is entitled to statutory damages for both Defendant's willful copyright infringement and violations of the DMCA. (Pl. Br. at 13 [citing 17 U.S.C. §§ 504, 1203.]) Typically, the law "forbids a plaintiff from recovering twice for the same injury", however, "in an appropriate case, separate DMCA and copyright awards might be permissible … because the Copyright Act and DMCA protect different interests." *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014). Thus, duplicative damages are avoided so long as the Court "properly distinguishes among these injuries." *Reilly v. Commerce*, No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *8 (S.D.N.Y. Oct. 31, 2016) (awarding plaintiff statutory damages under both the Copyright Act and DMCA). In *Reilly*, the court held that awarding damages under both the Copyright Act and the DMCA was appropriate because the plaintiff suffered two distinct injuries. *Id.* Specifically, the Court stated that "[d]efendant's use of [the plaintiff's] copyrighted Photograph without her permission deprived her of the ability to control when and where it would be displayed, as well as the licensing fee she would ordinarily charge for such display[]" whereas the "removal of her copyright notice and other CMI deprived her of professional recognition for the display[.]" *Id.* Therefore, this Court respectfully recommends awarding damages under both the Copyright Act and the DMCA, as further set forth below.

### B.    Statutory Damages under the Copyright Act

Plaintiff seeks to recover total damages of $450,000 under Section 504(a) of the Copyright Act, which entitles a plaintiff to recover statutory damages "of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c); (Pl. Br. at 15.) "For willful

infringement, the court may increase a damages award up to $150,000 per work." *EMI April Music Inc. v. 4MM Games, LLC*, No. 12-CV-2080 (DLC) (JLC), 2014 WL 325933, at *3 (S.D.N.Y. Jan. 13, 2014) (citing 17 U.S.C. § 504(c)(1)). Statutory damages may be awarded "without proof of plaintiff's actual damages," *Lucerne Textiles, Inc. v. H.C.T. Textiles Co.*, No. 12-CV-5456 (KMW) (AJP), 2013 WL 174226, at *2 (S.D.N.Y. Jan. 17, 2013) (internal citations omitted), *report & recommendation adopted by*, 2013 WL 1234911 (S.D.N.Y. Mar 26, 2013) and are particularly useful in matters "where proof of actual damages or profits is insufficient." *CJ Prods. LLC v. Your Store Online LLC*, No. 11-CV-9513 (GBD) (AJP), 2012 WL 2856068, at *2 (S.D.N.Y. July 12, 2012), *report and recommendation adopted*, 2012 WL 4714820 (S.D.N.Y. Oct. 3, 2012) (internal citation omitted).

The Court enjoys "wide discretion … in setting the amount of statutory damages." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 143 (2d Cir. 2010) (internal citation and quotation marks omitted). The Court considers the following factors to determine the award of statutory damages for copyright infringement:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Id.* at 144.

"With respect to the first factor—the infringer's state of mind—it may be inferred that the corporate Defendant's infringement was willful as a result of its default." *Parsons v. Bong Mines Ent. LLC*, No. 19-CV-0813 (JMA) (AKT), 2021 WL 931506, at *8 (E.D.N.Y. Feb. 18, 2021), *report and recommendation adopted*, 2021 WL 930259 (E.D.N.Y. Mar. 11, 2021); *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) ("Copyright infringement

is deemed willful by virtue of a defendant's default."). Defendant has infringed on Plaintiff's copyright by reproducing and publicly displaying the Original Designs. Indeed, "[t]his unlawful conduct continues" despite Plaintiff's multiple cease-and-desist letters to Defendant. *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD) (MMH), 2023 WL 2707096, at *6 (E.D.N.Y. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023); (Gerber Aff. ¶¶ 6-8, ECF No. 14.) Accordingly, this factor weighs in favor of a considerable award of statutory damages.

Regarding factors two and three, because Defendant has failed to appear and has not produced any financial records, "it is impossible to ascertain the total profits derived from and revenues lost by [Defendant's] unauthorized [reproduction] of" Plaintiff's Original Designs. *EMI April Music Inc.*, 2014 WL 325933, at *5. Moreover, Defendant has not provided information regarding the value of the infringed material. But Plaintiff has established the value of her copyright—$10.00 per original design, (Compl. at pp. 10-11, 13-14)—and while Plaintiff and the Court have little knowledge of the true extent of Defendant's business, the Court is entitled to assume that Defendant reaped some profits from sales of the Infringed Designs. *See DISH Network L.L.C. v. 786 Wireless World, Inc.*, No. 21-CV-5730 (AMD) (RML), 2024 WL 708229, at *8 (E.D.N.Y. Jan. 3, 2024), *report and recommendation adopted*, 2024 WL 1092498 (E.D.N.Y. Mar. 13, 2024).

Factor four also weighs in favor of Plaintiff. "[T]he Court must consider the deterrent effect on both other potential infringers as well [as] Defendants themselves." *Arista Recs. LLC v. Usenet.com, Inc.,* No. 07-CV-8822 (HB) (THK), 2010 WL 3629688, at *6 (S.D.N.Y. Feb. 2, 2010), *report and recommendation adopted*, 2010 WL 3629587 (S.D.N.Y. Sept. 16, 2010). Furthermore, "[w]here, as here, a defendant has acted willfully, a statutory award should

incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." *CJ Prods. LLC*, 2012 WL 2856068, at *3 (S.D.N.Y. July 12, 2012) (internal quotations omitted).

"[T]he fifth factor—the infringer's cooperation (or lack thereof) in providing evidence of the value of the infringing material—weighs in favor of Plaintiff by virtue of Defendant's default." *Martinka v. Yeshiva World News, LLC*, No. 20-CV-5330 (KAM) (VMS), 2022 WL 4484655, at *6 (E.D.N.Y. Sept. 27, 2022). Because Defendant failed to respond to Plaintiff's cease-and-desist letters and the Complaint while continuing to use her work, there is no discovery to reveal the value of the use of Plaintiff's Original Designs. Therefore, this factor also supports a statutory damages award.

Lastly, regarding the sixth factor, Defendant's default, weighs in favor of awarding Plaintiff a statutory damages award. *Sadowski*, 2023 WL 2707096, at *7 ("[T]he Court finds that Defendant's conduct in defaulting weighs in favor of a substantial statutory damages award."). Therefore, the Court respectfully recommends awarding statutory damages to Plaintiff.

Plaintiff argues that she is entitled to the "maximum statutory damages per each work infringed[]" because Defendant "has defaulted and continues to display and sell the Infringing Products on the CFK Website to an unknown number of retail customers to this day[.]" (Pl. Br. at 17.) However, courts in this circuit have observed that "[g]enerally, the statutory maximum is reserved for truly egregious conduct such as where a defendant has been adjudged to have willfully infringed yet continued the same pattern of behavior in contravention of court order." *Tips Exps., Inc. v. Music Mahal, Inc.*, No. 01-CV-5412 (SJF) (VVP), 2007 WL 952036, at *5 (E.D.N.Y. Mar. 9, 2007) (citing *Kepner–Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288–89 (2d Cir.1999)); *CJ Prods. LLC*, 2012 WL 2856068, at *4 ("Courts generally only issue maximum

statutory damage awards in situations where an infringer continues infringing activities after being put on notice by a court that its activities may constitute an infringement, or where the plaintiff shows the infringer's high revenue or profit gained through infringement.").

Although Plaintiff's multiple cease-and-desist letters likely put Defendant on notice of its infringing conduct, and statutory damages would satisfy the dual goals of compensation and deterrence, Defendant has not violated any court order warranting the maximum statutory award. Courts in the Second Circuit have declined to grant maximum statutory damages in cases where an infringer's conduct was much more egregious than the conduct at issue here. *See e.g.*, *Arista Records*, 2010 WL 3629688, at *6, 9 (stating that "only a significant damages award will curb [defendants'] abusive practices" but only awarding $7,500 per infringed work for a total of $6,585,000 where defendants' disregard of plaintiffs' exclusive rights and defiance of judicial process through discovery misconduct resulted in sanctions.); *Tips Exps., Inc.*, 2007 WL 952036, at *8 (granting $10,000 statutory damages award per work against one group of defendants that sold numerous unauthorized copies, had materials for creating bootleg copies, and had "been found liable for copyright violations in several prior litigations, and yet continued to engage in clearly infringing conduct.").

To support her request for $150,000 per work, Plaintiff cites *DISH Network L.L.C. v. 786 Wireless World, Inc.*, where the court awarded the maximum statutory award for willful infringement of the Copyright Act. In *Dish Network L.L.C.*, however, the plaintiff "enumerated 179 separate works that are registered with the U.S. Copyright Office and that defendants have infringed." *Dish Network L.L.C.*, 2024 WL 708229, at *8. Moreover, the court noted that "these 179 infringed works represent only a fraction of the works airing on the Protected Channels and of defendants' infringement of [plaintiff's] exclusive rights." *Id.* (internal citation omitted). Here,

Plaintiff seeks damages related only to three designs. Thus, the extent of the infringement in *Dish Network L.L.C.* was much greater than Defendant's conduct in the present matter.

Plaintiff also argues that Defendant's "advertisement of the Infringing Products through the CFK Website also supports an award of maximum statutory damages as advertising 'over the internet gives [Defendant] access to a virtually limitless number of customers.'" (Pl. Br. at 17) (quoting *Asia TV USA Ltd. v. Kamran Int. Trade Ltd.,* No. 17-CV- 5057 (FB), 2018 WL 6313215, at *8 (E.D.N.Y. Sept. 25, 2018) [internal quotations omitted]). In *Asia TV USA Ltd.*, the defendant used a "device to intercept and transmit plaintiffs' programming," and subsequently live-streamed "the infringing material over the internet 24 hours per day, seven days per week" even though plaintiffs "sent over 75 cease and desist letters advising defendants that plaintiffs are the registered owners to the various copyrights[.]" *Asia TV USA Ltd.*, 2018 WL 6313215, at *9. Thus, the degree of that harm suffered by the plaintiffs in *Asia TV USA Ltd.*, was far greater and more pervasive than the harm alleged by Plaintiff.

The facts of this case are far more similar to the facts of *Cawthon v. Yongchunhengyuanmaoyiyouxiangongsi*, No. 22-CV-5059 (PGG) (RWL), 2024 WL 4716232 (S.D.N.Y. Oct. 29, 2024), involving the unauthorized sale on Amazon of toys embodying two of the plaintiff's copyrighted video game characters. In awarding the plaintiff $25,000 in statutory damages for each work, the Court noted that in cases involving "making and selling knock-off toy products through internet platforms," damages "typically have been awarded in the range of $25,000 to $50,000" per copyright infringed. *Cawthon*, 2024 WL 4716232, at *7 (citing cases). The court further noted that most of those cases also involved counterfeit trademarks, and the statutory maximum for willfully counterfeited trademarks is $2,000,000, which is significantly higher than the $150,000 statutory maximum for copyright infringement. *Id.*

Accordingly, considering caselaw involving similar internet sales of copyrighted characters, and all of the *Bryant* factors, the Court determines that $25,000 per violation, for a total of $75,000, balances the need to compensate Plaintiff and deter Defendant, as well as other possible infringers.

### C.     Statutory Damages under the DMCA

Plaintiff's brief states that she is "seeking $25,000 for each of Defendant CFK's six violations of the DMCA." (Pl. Br. at 18.) "In [g]eneral..., a person committing a violation of section 1201 or 1202 [of the DMCA] is liable for either (A) the actual damages and any additional profits of the violator ..., or (B) statutory damages." 17 U.S.C. § 1203(c). Section 1203 of the DMCA further provides that "[a]t any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B). To determine the amount of statutory damages, courts consider several factors, "namely, the difficulty of proving actual damages, the circumstances of the violation, whether Defendants violated the DMCA intentionally or innocently, and deterrence." *Agence France Presse*, 2014 WL 3963124, at *10.

The relevant factors support awarding Plaintiff statutory damages under the DMCA. First, Defendant's default hinders Plaintiff's ability to calculate and prove the amount of actual damages Plaintiff suffered because of Defendant's DMCA violations. Second, the circumstances of the violation support an award of statutory damages. Plaintiff's complaint alleges that Defendant intentionally removed Plaintiff's CMI and subsequently "distributed the Infringing Products with CFK's own name, address, and website prominently displayed, knowing that this copyright management information was false." (Pl. Br. at 11 [citing Compl. ¶¶ 28-29, 31.])

Third, "the record supports a finding of willful infringement." *Phillips v. TraxNYC Corp.*, 2023 WL 1987206, at *9. Plaintiff has sent Defendant three cease-and-desist letters yet, despite being put on notice of the infringement, Defendant continues to violate Plaintiff's exclusive rights. *Id.* Lastly, statutory damages would deter Defendant, as well as other possible infringers, from violating Plaintiff's rights.

The Court does not agree, however, that the maximum statutory amount is necessary to sufficiently deter would-be infringers. For similar reasons stated in section IV.B., *supra*, the Court finds that a $25,000 award for six DMCA violations is disproportionate to the injury suffered by Plaintiff. Accordingly, the Court respectfully recommends awarding Plaintiff $10,000 per DMCA violation, for a total of $60,000. The Court believes that this amount achieves the dual goals of compensation and deterrence.

## V.       INJUNCTIVE RELIEF

In addition to statutory damages, Plaintiff requests the entry of a permanent injunction enjoining Defendant from further infringing the Original Designs. The Copyright Acts provides federal courts the ability to issue "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). To obtain a permanent injunction, a plaintiff must show: (1) an irreparable injury; (2) the inadequacy of remedies available at law, such as monetary damages; (3) that, considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010).

First, Plaintiff has suffered irreparable injury. Although "courts must not simply presume irreparable harm in copyright cases, 'courts have tended to issue injunctions in this context

because 'to prove the loss of sales due to infringement is ... notoriously difficult.'" *Dish Network L.L.C.*, 2024 WL 708229, at \*9 (quoting *Salinger*, 607 F.3d at 81). Furthermore, Defendant has caused irreparable harm to Plaintiff in several ways, including by directly competing with Plaintiff's Original Designs and depriving Plaintiff of her ability to control the quality of her copyrighted works. *Id.*

Second, monetary damages are inadequate to fully protect Plaintiff's exclusive rights. Although the recommended awards of monetary damages are significant, they "are inadequate to prevent future piracy without injunctive relief." *Id.* at \*10; *Fallows v. Vos Iz Neias LLC*, No. 22 CV 7964 (ARR) (LB), 2023 WL 7497080, at \*4 (E.D.N.Y. Oct. 25, 2023), *report and recommendation adopted*, 2023 WL 7522732 (E.D.N.Y. Nov. 13, 2023) ("refusal to defend [the] action creates a threat that they will continue to infringe Plaintiff's [intellectual property] unless permanently enjoined from doing so." )

Third, the balance of hardships favors Plaintiff. "[R]equiring [the defendant] to cease infringing [the plaintiff's] exclusive rights in copyrighted television programming will not harm [the defendant] because they have no legitimate interest in continuing the infringement." *Dish Network L.L.C.*, 2024 WL 708229, at \*10. Moreover, "the public has a compelling interest in protecting copyright owners' marketable rights to their work[.]" *WPIX*, Inc. *v. ivi, Inc.*, 691 F.3d 276, 287 (2d Cir. 2012).

Fourth, the public interest would not be disserved by a permanent injunction. "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections ...." *Dish Network L.L.C.*, 2024 WL 708229, at \*10 (internal quotation omitted).

Accordingly, the Court respectfully recommends a permanent injunction be issued against Defendant enjoining Defendant from using Plaintiff's Original Designs.

## VI.    ATTORNEY'S FEES AND COSTS

Under the Copyright Act, this Court has discretion to "allow the recovery of full costs by or against any party other than the United States," including "a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The DMCA has a similar provision, stating that the Court "in its discretion may allow the recovery of costs by or against any party other than the United States." 17 U.S.C. § 1203(b)(4). The awarding of these fees under both the Copyright Act and the DCMA is left to the court's discretion. *Realsongs, Universal Music Corp. v. 3A North Park Ave. Rest Corp.*, 749 F. Supp. 2d 81, 87 (E.D.N.Y. 2010).

This Court has found, in the context of default judgments, that a defendant's "failure to participate" is "willful infringement" for which reasonable attorney's fees are appropriate. *Id.* The Unites States Supreme Court has placed two limits on the Court's discretion to award attorney's fees: (1) awarding of attorney's fees cannot be a "matter of course," but rather the court must make a "particularized . . . assessment", and (2) prevailing plaintiffs and defendants are to be treated the same. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). Additionally, the Supreme Court has provided for "several nonexclusive factors" to further guide courts in fee-shifting decisions. *Id.* (citing *Fogerty*, 510 U.S. at 534 n.19). These include: "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (alteration in original); *see also Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014) (emphasizing that "objective reasonableness . . . should be given substantial weight") (internal citation omitted). To calculate reasonable

attorney's fees, the Second Circuit conducts a lodestar analysis, which uses a comparable rate for lawyers of similar skill and experience. *Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 150 (2d Cir. 2001).

### A. Rate Analysis

"[P]revailing rates for experienced attorneys . . . range from approximately $300 to $400 per hour. *Zuffa, LLC v. South Beach Saloon, Inc.*, No. 15-CV-6355 (ADS) (AKT), 2019 WL 1322620, at *7 (E.D.N.Y. Mar. 6, 2019). However, the range is higher for partners, whose hourly rate can fall approximately between $300 to $450. *Id.* at *6 (quoting *Safeco Insurance Company of America v. M.E.S., Inc.*, No. 09-CV-3312 (PKC) (VMS), 2018 WL 2766139, at *7 (E.D.N.Y. June 8, 2018)). Within this range, this Court has decreased the attorney's reasonable rate when considering other factors, including:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*, 522 F.3d 182, 184 (2d Cir. 2008). These factors are to be considered along with the attorney's "time and labor," the "novelty and difficulty" of the matter, the "skill required," the "preclusion of employment by the attorney" because of the case, the attorney's standard hourly rate, "whether the fee is fixed or contingent," time limits, "the experience, reputation, and ability of the attorneys," the "undesirability of the case," "nature and length of professional relationship with the client," and

awards in like cases. *Zuffa, LLC*, 2019 WL 1322620, at *7 (quoting *Gomez v. Midwood Lumber & Milllwork, Inc.*, No. 17-CV-3064 (KAM) (JO), 2018 WL 3019877, at *4 (E.D.N.Y. June 17, 2018)).

In the present case, the Plaintiff is requesting attorney's fees of $8,055. (Gerber Decl. ¶ 18, ECF No. 14.) Plaintiff calculated this number based on the following attorney rates: (1) the partner Andrew Gerber's hourly rate of $500 based on his twenty years of intellectual property law experience in New York; (2) the third-year associate Vanessa Sorrentino's hourly rate of $320 based on her two clerkships and practice of intellectual property with the firm; and (3) and the first-year associate Tiffany Wong's hourly rate of $220, based on her recent experience as a law clerk and admission to the bar in August of 2024. (*Id.* ¶¶ 19–21.) Although the case was not overly complex and did not have extensive discovery, considering the other factors, including the higher range of attorney's fees for partners that this Court has granted and the "experience, reputation, and ability" of the partner, his fees are reasonable. The third year and first year associates' fees are also reasonable as they fall within this District's accepted range of $300 to $400 an hour.

**B.    Hours Analysis**

Generally, the Second Circuit applies a reasonableness standard in evaluating the number of hours counsel has spent on a particular matter. *Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)). Plaintiff bears the burden of showing this reasonableness, "supported by contemporaneous time records" that are specific in detailing the attorney, the work, the hours, and the dates. *Fox Industries, Inc. v. Gurovich*, No. 03-CV-5166 (TCP) (WDW), 2005 WL 2305002, at *1 (E.D.N.Y. Sept. 21, 2005); *see also Hensley v.*

*Eckerhart*, 461 U.S. 424, 437 n.12 (1983) (noting that although parties are "not required in great detail" to record "how each minute of his time was expended" . . . "counsel should identify the general subject matter of his time expenditures.").

In the present case, Plaintiff has submitted an accounting of fees and costs detailing the number of hours each attorney spent on various tasks, including drafting and editing the complaint, drafting the motion for default judgment, and the statement of damages—totaling 34.75 hours. (Attorney's Costs & Fees, Ex. D., ECF No. 14-4.) These time records satisfy the standard outlined by the Second Circuit and reflect a reasonable number of hours.

### C.      Costs and Fees Reimbursement

Under § 505 of the Copyright Act, this Court can "allow the recovery of full costs" against Defendant in this action. 17 U.S.C. § 505; *see also Realsongs, Universal Music Corp. v. 3A North Park Ave. Rest Corp.*, 749 F. Supp. 2d 81, 87 (E.D.N.Y. 2010). Plaintiff is requesting $519.30 in costs and fees based on the $405.00 filing fee for the Complaint and the $144.0 fee for service of process. (Attorney's Costs & Fees, Ex. D, ECF No. 14-4.) This Court has previously held that recovery of filing and service of process fees are recoverable under § 505. *Realsongs, Universal Music Corp.*, 749 F. Supp. 2d at 92-93. The finds Plaintiff's request for reimbursement of filing and service fees to be reasonable.

<u>CONCLUSION</u>

For all of the foregoing reasons, I respectfully recommend that the District Court (1) grant Plaintiff's motion for default judgment; (2) award Plaintiff $135,000 in statutory damages from Defendant; (3) issue a permanent injunction enjoining Defendant from further infringement of Plaintiff's copyrighted works; and (4) award Plaintiff's counsel their attorney's fees of $8,055 and costs of $519.30.

Any objections to the Report and Recommendation above must be filed with the Clerk of Court within 14 days of receipt of this report. Any request for an extension of time to file objections shall be directed to Judge Block. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.") (quotations omitted).

Dated: Brooklyn, New York
      February 5, 2025

*Lara K. Eshkenazi*
LARA K. ESHKENAZI
United States Magistrate Judge